**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**DAONTAE T. SCOTT,**

　　**Petitioner,**

**v.**　　　　　　　　　　　　　　　**Case No. 3:20cv5900-MCR/MAF**

**SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,**

　　**Respondent.**

_____/

## REPORT AND RECOMMENDATION

On October 21, 2020, Petitioner Daontae T. Scott, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   ECF No. 1.   He filed a first amended § 2254 petition, ECF No. 18-1, and ultimately requested leave to file a second amended § 2254 petition, ECF No. 27, which this Court granted by order on October 28, 2021, ECF No. 28.   Respondent filed a motion to dismiss the second amended petition, ECF No. 34, as untimely.   ECF No. 35.   Petitioner has not filed a reply, although he was given the opportunity to do so.   *See* ECF Nos. 28, 30, 32, 38.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and

Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. For the reasons stated herein, the pleadings and attachments before the Court show Respondent's motion may be granted and the second amended § 2254 petition dismissed. Alternatively, in an abundance of caution, the Court should consider the first amended § 2254 petition (ECF No. 18-1), in addition to the single untimely "Ground 4" in the second amended "supplemental" petition (ECF No. 34), and deny federal habeas relief on the grounds that relate back to his timely original petition (ECF No. 1), and also deny Respondent's motion to dismiss (ECF No. 35) as moot. *See* Rule 4, R. Gov. § 2254 Cases (authorizing dismissal "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief" in federal court).

## Procedural History

As indicated above, on October 21, 2020, Petitioner Scott filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. He indicated he was challenging his convictions in cases 2014-CF-4648 and 2015-CF-1105, from the First Judicial Circuit, Escambia County, following

bench trials during which Scott represented himself. *Id*. at 1; Ex. A at 141-54, 159-61, 166; Ex. C at 3-18, 111, 154.[1]   In a motion submitted for mailing on November 30, 2020, ECF No. 6, Scott sought leave to file an amended § 2254 petition, which the Court granted by order on December 9, 2020, ECF No. 8.

Petitioner then requested an extension of time to submit his amended § 2254 petition.   ECF No. 9.   In support of his request, he stated he had no access to the prison law library because of COVID-19 quarantine restrictions.   *Id*. at 2-3.   He requested an extension of sixty (60) days.   *Id*. at 3.   By order on January 4, 2021, the Court granted Petitioner's requested extension, directing him to submit his amended petition on the appropriate forms on or before March 9, 2021.   ECF No. 10.

Thereafter, on January 7, 2021, Petitioner Scott filed a "Motion to Stay and Abey Proceeding Pursuant to <u>Pace v. DiGugliemo</u>, 544 U.S. 408 (2005)."   ECF No. 11.   By order on March 17, 2021, this Court denied that motion and gave Petitioner an opportunity to file the amended § 2254 petition on or before April 19, 2021, in accordance with the Court's previous orders.

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's motion to dismiss, ECF No. 35, most of which were previously submitted with Respondent's answer, ECF No. 26.

ECF No. 12; *see* ECF Nos. 8, 10.   The Court also advised that, in the alternative, if Petitioner wished to voluntarily dismiss this proceeding, he could do so by filing a notice of voluntary dismissal, though cautioning him about the AEDPA limitations period and advising him that the filing of a federal habeas petition does not toll that period.   ECF No. 12 at 3-4; Fed. R. Civ. P. 41(a)(1)(A)(i).

On April 26, 2021, Petitioner submitted a "Memorandum of Law in Support of Federal Habeas Corpus."   ECF No. 13.   At that point, however, Petitioner had not filed an amended § 2254 petition as instructed in the Court's previous orders.   *See* ECF Nos. 8, 10, 12.

On May 31, 2021, Petitioner filed another "Motion to Stay/Abey Proceeding."   ECF No. 15.   Petitioner's filing evidently crossed in the mail with this Court's order of June 9, 2021, which explained Petitioner had not complied with this Court's earlier orders and allowed Petitioner a final opportunity to submit an amended § 2254 petition according to the Court's instructions.   ECF No. 14.

In the motion filed May 31, 2021, Petitioner stated he has a pending "post-conviction 3.800 amended post-conviction Motion for Correction of Illegal Sentence," which he filed in the First Judicial Circuit, Escambia

County.   ECF No. 15 at 1.   He stated this state court motion has been pending since January 12, 2021, and he requested this Court "hold" his federal habeas petition until the state court rules on his motion.   *Id*. Petitioner cited no authority for his request.   *See id*.

By order on June 14, 2021, this Court denied the May 31 motion to stay.   ECF No. 16.   The Court allowed Petitioner until July 9, 2021, to submit an amended § 2254 petition.   *Id*.

In early July 2021, Petitioner filed a "Motion to Accept as Timely/Adequately Filed," ECF No. 18, his amended § 2254 petition, which he attached to his motion, ECF No. 18-1.   The Court granted the motion and accepted the amended § 2254 petition.   ECF No. 20.   (The attached amended petition indicates Scott signed it and submitted it for mailing on April 9, 2021, ECF No. 18-1 at 19-20, and one of the prison date stamps on the motion, from Cross City Correctional Institution, also reflects that date, *id*. at 1.   Two other prison date stamps on the motion, however, as well as the postage on the envelope, reflects it was submitted for mailing, at Columbia Correctional Institution, on July 1, 2021.   *Id*. at 1, 23.)

Also in early July 2021, Petitioner filed another "Motion to Stay and Abey Proceeding to Pace v. Digugliemo, 544 U.S. 408 (2005)."   ECF No.

19.   In this motion, as in his first motion to stay, Petitioner explained he "filed his petition on the basis of information provided him by an Inmate Law Clerk and has just recently learned of the exhausted requirement under § 2244(b)." *Id*. at 1.   Further, as in his first motion to stay, Petitioner stated that he "recently learned of a[n] unexhausted sentencing issue that is on the face of the record" and, accordingly, he "has compiled and file[d] a Rule 3.800(a) motion for postconviction relief to correct the illegal sentencing issue."   *Id*. at 2.   He requested, as he did in his first motion to stay, "in an abundance of caution," that this Court stay and abey his federal habeas petition given that he is "currently seeking collateral review proceedings in state court."   *Id*. As before, in support of his request, he cited Pace, 544 U.S. at 416-17, and Rhines v. Weber, 544 U.S. 269, 278 (2005).   ECF No. 19 at 2.   This time, unlike with his previous requests for a stay, Petitioner attached copies of his Rule 3.800(a) filings.   *See* ECF No. 19-1, 19-2.

In the order denying the second motion to stay, this Court again explained that Petitioner's federal habeas proceeding has been pending since October 2020, *see* ECF No. 1, and he previously filed two other motions to stay/abey this federal proceeding, referencing the same pending state Rule 3.800(a) proceedings.   ECF No. 20; *see* ECF Nos. 11, 15.   In

the orders denying those motions to stay/abey, this Court explained the applicable law, set forth in Rhines v. Weber, 544 U.S. 269 (2005).   *See* ECF No. 12, 16.   Specifically, in Rhines, the U.S. Supreme Court held that a "stay and abeyance" of a mixed federal habeas petition is appropriate only if (1) the petitioner had "good cause" for failing to exhaust the claims in state court; (2) the unexhausted claims are "potentially meritorious"; and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics."   Rhines, 544 U.S. at 277-78.   This Court determined Petitioner Scott had still not shown that he meets any of these three requirements and had asserted no basis to support a stay.   ECF No. 20.

In particular, and perhaps most importantly, the Court explained the claims Petitioner raised in his Rule 3.800(a) proceeding are not the same as those he raised in his amended § 2254 petition.   *Compare* ECF No. 18-1 *with* ECF No. 19-1, 19-2.   In the amended § 2254 petition, Scott raised three grounds:   (1) "[t]rial court erred by failing to renew the offer of counsel before the start of the second trial thus, violating Petitioner's 6th Amendment right to be represented by counsel at every critical stage of the process," ECF No. 18-1 at 9; (2) "[a]ppellate counsel was ineffective for failing to argue on appeal that Court abused its discretion when it found Petitioner competent

to stand trial without first allowing the experts to testify consistent with their reports, or obtain the third report," *id*. at 11; and (3) "[p]re-trial counsel provided ineffective assistance in failing to do any reasonable pre-trial investigation that would have been helpful to Petitioner's case, such as provide/conducting pre-trial depositions and other relevant factual background investigations," *id*. at 13.   In his Rule 3.800(a) motion, Scott asserted his sentence is illegal because the state trial court erred in sentencing him pursuant to the Prison Releasee Reoffender Act, in enhancing his battery conviction to a felony, and in sentencing him for aggravated assault without a finding that he used a deadly weapon.   *See* ECF No. 19-1, 19-2.   Thus, the amended § 2254 petition contained none of the claims raised in the pending 3.800(a) proceeding.   Petitioner asserted no basis to support a stay in this case and this Court denied his request. ECF No. 20.

The Court directed Respondent to file an answer, motion, or other response to the amended § 2254 petition on or before October 12, 2021, and allowed Petitioner until November 12, 2021, to file a reply, if any.   ECF No. 20.   On September 22, 2021, Respondent filed an answer, with exhibits. ECF No. 26.   In its answer, Respondent indicated the AEDPA limitations

period had expired on November 19, 2020, the amended § 2254 petition was untimely, and all claims presented in the amended petition were barred in federal habeas unless they related back to claims presented in the original timely § 2254 petition.   ECF No. 26 at 2-9.   Respondent addressed "relation back" with respect to each individual claim presented in the first amended petition, explaining that Ground 1 related back to Ground 4 of the original § 2254 petition and part of Ground 3 related back to Ground 5 of the original petition; however, Ground 2 was barred as it did not relate back to anything in the original petition.   *Id*. at 17-46.

Two days later, on September 24, 2021, Petitioner submitted for mailing a "Motion to Request Amended Petitioner Writ Federal Habeas Corpus."   ECF No. 27.   In this motion, Petitioner indicated he wanted to file another amended § 2254 petition as he "just recently learned that it fews [sic] more issue[s]."   *Id*. at 1.   Respondent filed no objection or otherwise responded to this motion and request.   In an abundance of caution, by order on October 28, 2021, the Court permitted Petitioner to file a second amended § 2254 petition on or before November 29, 2021.   ECF No. 28.

Petitioner did not timely submit a second amended § 2254 petition. Instead, on November 23, 2021, Petitioner submitted a "Notice of Inquiry."

ECF No. 29.   In this filing, Petitioner indicated he requested leave to submit a second amended petition but has "not heard anything."   *Id*.   By order on December 1, 2021, this Court directed the Clerk's Office to send Petitioner a copy of the October 28 order and allowed Petitioner until January 3, 2022, to file his second amended § 2254 petition, following the Court's directions. ECF No. 30.

On December 8, 2021, Petitioner filed a motion requesting an extension of time to submit his second amended § 2254 petition.   ECF No. 31.   He requested an extension of sixty (60) days, which this Court granted by order on December 15, 2021.   ECF No. 32.   The Court reminded Petitioner that he should submit his second amended § 2254 petition following the directions in previous orders, ECF Nos. 28, 30.   The Court allowed Respondent until April 4, 2022, to file an amended answer, and allowed Petitioner until May 4, 2022, to file a reply.   ECF No. 32 at 2.

On January 4, 2022, Petitioner submitted for mailing a "Supplemental to Petition for Writ of Habeas Corpus."   ECF No. 34.   This was docketed as Petitioner's second amended petition.   *See id*.; ECF No. 36.

On January 12, 2022, Respondent filed a motion to dismiss the second amended petition as untimely.   ECF No. 35.   Respondent asserts this

Court expressly and repeatedly cautioned Petitioner that his amended petition(s) must incorporate all claims, lest the claims be abandoned. *Id.* at 12. Thus, Respondent indicates "with the second amended § 2254 petition presenting one ground, those presented in the amended § 2254 petition, but omitted from the second, are abandoned." *Id.*; *see* N.D. Fla. Loc. R. 15.1(A). Respondent contends that because the second amended petition is untimely, the claim presented therein is barred in federal habeas unless it relates back to the claims presented in the original, timely petition. ECF No. 35 at 12. Respondent explains that the claim presented in the second amended petition – that Petitioner's Sixth Amendment right to counsel was violated when the court made a finding that it was necessary to protect the public by imposing a sentence above the statutory maximum – was not presented in the original petition and does not "relate back" to any of the five grounds presented in the original petition. *Id.* at 12-13. Respondent thus requests the Court dismiss the second amended § 2254 petition with prejudice as untimely. *Id.* at 14.

On March 28, 2022, Petitioner submitted an "Inquiry." ECF No. 37. Petitioner stated, "I want to thank the Clerk of Court, for allow Mr. Scott, to add one more issue, to the other (3) issue I had in the Court." *Id.* Petitioner

then asked, "Could the Clerk of Court give me some type of calculation on Mr. Scott pending 2254 Habeas Corpus Federal Motion"?    *Id*.

In an order issued April 4, 2022, ECF No. 38, this Court explained this case is proceeding on the second amended § 2254 petition filed by Petitioner on January 4, 2022, which presents one ground for review, although it is numbered as "Ground 4," ECF No. 34.   The Court noted it had previously indicated that this case has been pending since October 2020, *see* ECF Nos. 32, 28, 16, 14, 10, 8, and, in granting each of Petitioner's requests to amend, this Court specifically had instructed Petitioner that he needed to include "all the grounds for relief" in the amended petition and that claims not set forth therein are "deemed abandoned," *see* ECF Nos. 8, 14, 10, 16, 28; *see also* ECF No. 30, 32.   The Court also explained that Respondent had filed a motion to dismiss the second amended § 2254 petition as untimely, ECF No. 35, and, pursuant to the Court's previous order, Petitioner had until May 4, 2022, to file a reply, if any, to the motion to dismiss.   Petitioner has not filed a reply or anything else in this case.

## **Analysis**

This case is before the Court for consideration of the second amended petition filed in January 2022, ECF No. 34, and Respondent's motion to

dismiss that petition, ECF No. 35.   As Respondent indicates, both of Scott's underlying state court criminal cases were called for a bench trial on April 7, 2016, with 2014-CF-4648 tried first and taken under advisement, and then 2015-CF-1105 tried, with Scott representing himself during both trials.   ECF No. 35 at 4; *see* Ex. C at 3-18, 111.   At the conclusion of the second trial, the judge issued verdicts finding Scott guilty as charged in both cases.   Ex. C at 154.   The court rendered judgments and sentences in both cases on May 23, 2016.   Ex. B at 217-18; 233-43.

Scott appealed his judgments and sentences to the First District Court of Appeal (First DCA), assigned case number 1D16-2717.   Ex. B at 381-84; Exs. E, F, G.   Through counsel, he filed a motion to correct a sentencing error in case number 2014-CF-4698, Ex. D at 394-96, which the circuit court granted by order on November 29, 2016, *id*. at 398-99, directing that the habitual felony offender sentences on Counts 1 and 2 in that case be served concurrently, not consecutively, and that the judgment reflect 575 days credit for time served.   The corrected judgment and sentence for 2014-CF-4698 was rendered December 5, 2016.   Ex. D at 400-10.

In the First DCA, Scott's counsel filed an initial brief, Ex. E, and the State filed an answer brief, Ex. F.   Scott's counsel filed a reply brief, Ex. G.

In an opinion issued August 14, 2017, authored by Judge T. Kent Wetherell, the First DCA affirmed the judgments on appeal.   Ex. H; <u>Scott v. State</u>, 230 So. 3d 53 (Fla. 1st DCA 2017).   By order on September 22, 2017, the First DCA denied Scott's counseled motion for rehearing, rehearing en banc, and certification of conflict or a question of great public importance.   Ex. I.   The mandate issued October 13, 2017.   Ex. H.

Thereafter, through counsel, Scott sought to invoke the discretionary jurisdiction of the Florida Supreme Court.   Ex. J; *see* Exs. K, L.   On December 27, 2017, that court declined to accept jurisdiction and indicated it would not entertain a motion for rehearing.   Ex. M.

Therefore, Scott's convictions became final for federal habeas purposes on **March 27, 2018**, upon expiration of the ninety-day period for seeking certiorari review in the U.S. Supreme Court. *See* 28 U.S.C. § 2244(d)(1)(A); *see also, e.g.*, <u>Nix v. Sec'y for Dep't of Corr.</u>, 393 F.3d 1235, 1236-37 (11th Cir. 2004); <u>Kaufman v. United States</u>, 282 F.3d 1336, 1338 (11th Cir. 2002).   He had one year thereafter, or until March 27, 2019, to file his federal habeas petition, absent tolling activity.   *See, e.g.*, <u>Cadet v. Fla. Dep't of Corr.</u>, 853 F.3d 1216, 1218 (11th Cir. 2017) (explaining Cadet's conviction became final "on December 23, 2002, when the time for seeking

a writ of certiorari from the United States Supreme Court expired" and "[o]n that same date, Cadet's one-year statute of limitations for filing a federal habeas petition began to run," citing 28 U.S.C. § 2244(d)(1)(A)); Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (calculating limitations period according to "anniversary method"); Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007) (applying anniversary date analysis).

In the meantime, on January 25, 2018, Scott filed in the First DCA a pro se petition alleging ineffective assistance of appellate counsel.   Ex. N. The State filed a response.   Ex. O.   On August 15, 2018, a panel of the First DCA that included Judge Allen Winsor denied the petition on the merits, without a discussion.   Ex. P; Scott v. State, 251 So. 3d 349 (Fla. 1st DCA 2018).   By order on October 25, 2018, the First DCA denied Scott's motion for a written opinion.   Ex. Q.

During the pendency of his petition in the First DCA, Scott filed in the state trial court, on August 8, 2018, a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.   Ex. R at 16-45.   By order on December 7, 2018, the court struck the motion as facially insufficient and allowed leave to amend.   Ex. R at 46-47.   Scott filed an amended Rule 3.850 motion on January 16, 2019.   Ex. R at 48-73 (exclusive of

attachments).    By order rendered February 8, 2019, the state post-conviction court summarily denied Scott's amended motion.    Ex. R at 74-78 (exclusive of attachments).    Scott appealed to the First DCA, Ex. R at 147, and filed an initial brief in assigned case number 1D19-818, Ex. S.   The State filed a notice that it would not file an answer brief.   Ex. T.   On October 21, 2019, the First DCA per curiam affirmed the case without a written opinion.   Ex. U; Scott v. State, 282 So. 3d 59 (Fla. 1st DCA 2019) (table).   The mandate issued November 18, 2019.   Ex. U.

Due to all these overlapping filings, Scott's one-year limitation period under the Anti-terrorism and Effective Death Penalty Act (AEDPA) did not begin running until November 19, 2019, the day after the First DCA's mandate in the appeal of the denial of his Rule 3.850 motion.    It ran for 365 days thereafter until it expired on November 19, 2020.   *See* 28 U.S.C. § 2244(d)(1)(A); *see also, e.g.*, Cadet, 853 F.3d at 1218; Downs, 520 F.3d at 1318; Ferreira, 494 F.3d at 1289 n.1.   During that one-year period, from November 19, 2019, through November 19, 2020, Scott did not have any properly filed application for relief pending in state court.   *See* 28 U.S.C. § 2244(d)(2).   Anything he filed in state court after November 19, 2020, could not toll his AEDPA time limitation period as no such time remained to

be tolled.   *See, e.g.,* <u>Webster v. Moore</u>, 199 F.3d 1256, 1259 (11th Cir. 2000).

As indicated above, Scott filed his original § 2254 petition in this Court on October 21, 2020.   ECF No. 1.   Although that petition was timely filed, it did not toll the AEDPA limitation period.   <u>Duncan v. Walker</u>, 533 U.S. 167, 181-82 (2001) ("[O]ur sole task in this case is one of statutory construction, and upon examining the language and purpose of the [AEDPA] statute, we are convinced that § 2244(d)(2) does not toll the limitation period during the pendency of a federal habeas petition.   We also note that, when the District Court dismissed respondent's first federal habeas petition without prejudice, respondent had more than nine months remaining in the limitation period in which to cure the defects that led to the dismissal. . . . We hold that an application for federal habeas review is not an 'application for State post-conviction or other collateral review' within the meaning of 28 U.S.C. § 2244(d)(2).   Section 2244(d)(2) therefore did not toll the limitation period during the pendency of respondent's first federal habeas petition."). Indeed, in the orders denying Scott's motions to stay, this Court instructed Scott that "[t]he filing of a federal habeas petition does not toll the AEDPA limitations period."   ECF No. 12 at 4; ECF No. 16 at 4.

Scott repeatedly sought to amend his § 2254 petition after his AEDPA limitations period expired. ECF Nos. 6, 27. He filed a first amended petition on July 1, 2021. ECF No. 18-1. After Respondent filed an answer to that petition, Scott requested leave to file a second amended petition, which this Court granted by order on October 28, 2021, having received no objection by Respondent. ECF No. 28. Scott ultimately filed his second amended petition on January 4, 2022, ECF No. 34, though he labeled this filing as "Supplemental to Petition for Writ of Habeas Corpus," despite this Court's specific instructions to him that he needed to include "all the grounds for relief" in the second amended petition and "[t]he second amended petition must be filed in its entirety, incorporating all amendments, as claims not set forth in an amended petition are deemed abandoned," ECF No. 28 at 6-7. *See* Rule 2(c), R. Gov. § 2254 Cases in U.S. Dist. Cts.; N.D. Fla. Loc. R. 15.1. *See also* ECF Nos. 6, 8, 10, 12, 14, 16, 30, 32.

## Second Amended § 2254 Petition

Any claims presented in an amended petition filed after the expiration of the AEDPA limitations period are barred unless they relate back to claims presented in the original timely petition. Mayle v. Felix, 545 U.S. 644, 648-50 (2005) (involving petitioner's amended habeas petition, filed after the one-

year AEDPA limitations period and adding new claim that police used coercive tactics to obtain damaging statements from him admitted at trial in violation of his Fifth Amendment right against self-incrimination, did not relate back to date of original petition, which had alleged that admission into evidence of prosecution witness's videotaped testimony violated his rights under Sixth Amendment's Confrontation Clause, rejecting petitioner's argument that amended petition related back because both original petition and amended petition arose from same trial and conviction, and holding: "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."); *see* Fed. R. Civ. P. 15(c).   In particular, the U.S. Supreme Court has explained:

> Congress enacted AEDPA to advance the finality of criminal convictions. *See* Rhines v. Weber, 544 U.S. 269, 276 . . . (2005).   To that end, it adopted a tight time line, a one-year limitation period ordinarily running from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A).   If claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance. *See* [Felix v. Mayle], 379 F.3d [612], at 619 [(9th Cir. 2004)] (Tallman, J., concurring in part and dissenting in part) (Ninth Circuit's rule would permit "the

'relation back' doctrine to swallow AEDPA's statute of limitation"); Pittman, 209 F.3d, at 318 ("If we were to craft such a rule, it would mean that amendments ... would almost invariably be allowed even after the statute of limitations had expired, because most [habeas] claims arise from a criminal defendant's underlying conviction and sentence."); Duffus, 174 F.3d, at 338 ("A prisoner should not be able to assert a claim otherwise barred by the statute of limitations merely because he asserted a separate claim within the limitations period."). The very purpose of Rule 15(c)(2), as the dissent notes, is to "qualify a statute of limitations." Post, at 2576.   But "qualify" does not mean repeal. *See* Fuller v. Marx, 724 F.2d 717, 720 (C.A.8 1984). Given AEDPA's "finality" and "federalism" concerns, *see* Williams v. Taylor, 529 U.S. 420, 436 . . . (2000); Hicks, 283 F.3d, at 389, it would be anomalous to allow relation back under Rule 15(c)(2) based on a broader reading of the words "conduct, transaction, or occurrence" in federal habeas proceedings than in ordinary civil litigation.

Felix urges that an unconstrained reading of Rule 15(c)(2) is not problematic because Rule 15(a) arms district courts with "ample power" to deny leave to amend when justice so requires. *See* Brief for Respondent 31-33. Under that Rule, once a responsive pleading has been filed, a prisoner may amend the petition "only by leave of court or by written consent of the adverse party."   Rule 15(a); *see* Ellzey v. United States, 324 F.3d, at 526 (AEDPA's aim to "expedite resolution of collateral attacks ... should influence the exercise of discretion under Rule 15(a)—which gives the district judge the right to disapprove proposed amendments that would unduly prolong or complicate the case.").   This argument overlooks a pleader's right to amend without leave of court "any time before a responsive pleading is served."   Rule 15(a).   In federal habeas cases that time can be rather long, as indeed it was in the instant case.   Under Habeas Corpus Rule 4, a petition is not immediately served on the respondent.   The judge first examines the pleading to determine whether "it plainly appears ... that the petitioner is not entitled to relief."   Only if the petition survives that preliminary inspection

will the judge "order the respondent to file an answer."   In the
interim, the petitioner may amend his pleading "as a matter of
course," as Felix did in this very case.   Rule 15(a).   Accordingly,
we do not regard Rule 15(a) as a firm check against petition
amendments that present new claims dependent upon discrete
facts after AEDPA's limitation period has run.

      Our rejection of Felix's translation of same "conduct,
transaction, or occurrence" to mean same "trial, conviction, or
sentence" scarcely leaves Rule 15(c)(2) "meaningless in the
habeas context," 379 F.3d, at 615.   So long as the original and
amended petitions state claims that are tied to a common core
of operative facts, relation back will be in order.   Our reading is
consistent with the general application of Rule 15(c)(2) in civil
cases, with Habeas Corpus Rule 2(c) and with AEDPA's
installation of a tight time line for § 2254 petitions.

<u>Mayle</u>, 545 U.S. at 662-65 (internal citations and footnotes omitted).

Thus, the single ground in Scott's second amended petition is barred

in federal habeas unless it relates back to one of the grounds presented in

his original petition, which was timely filed.   The original petition, filed timely

on October 21, 2020, contained five grounds, including two alleging

ineffective assistance of counsel (IAC):

(1) **Trial Court Error**:   The Petitioner was denied due process
when the trial court failed to conduct a full competency
hearing in violation of <u>Pate v. Robinson</u>, 383 U.S. 375, ECF
No. 1 at 4;

(2) **IAC/Trial**:   Counsel was ineffective for failing to protect the
due process rights not to be tried or convicted while
incompetent afforded to Petitioner through the opinion issued
in <u>Pate v. Robinson</u>, ECF No. 1 at 10;

(3) **Trial Court Error**:   Petitioner's rights under the 5th, 6th, and 14th Amendments were violated when the trial court allowed Petitioner to unintelligently waive his right to counsel, ECF No. 1 at 15;

(4) **Trial Court Error**:   The trial court violated Petitioner's rights under the 5th, 6th, and 14th Amendments by failing to conduct a <u>Faretta</u> hearing at each stage of the proceedings, ECF No. 1 at 19; and

(5) **IAC/Trial**:   Counsel was ineffective for failing to investigate and obtain exculpatory security camera footage "to show that he never had in his possession the 'shears' as alleged or any other object, to support the Aggravated Assault charge," ECF No. 1 at 22.

In his first amended § 2254 petition, filed untimely on July 1, 2021, Scott raised only three grounds:

(1) **Trial Court Error**:   The trial court erred by failing to renew the offer of counsel before the start of the second trial, thus violating Petitioner's 6th Amendment right to be represented by counsel at every critical stage of the process, ECF No. 18-1 at 9;

(2) **IAC/Appellate**:   Appellate counsel was ineffective for failing to argue on appeal that the trial court abused its discretion when it found Petitioner competent to stand trial without first allowing the experts to testify consistent with their reports, or obtain the third report, ECF No. 18-1 at 11; and

(3) **IAC/Trial**:   Trial counsel provided ineffective assistance in failing to do any reasonable pre-trial investigation that would have been helpful to Petitioner's case, such as pre-trial depositions and other relevant factual background investigations, ECF No. 18-1 at 13.

In the second amended petition, untimely filed on January 4, 2022, Scott raises a single ground asserting trial court error, labeled as "Ground 4: Supplemental to Habeas Corpus § 2254":

> The Petitioner's Sixth Amendment right to Counsel was violated when Court made a finding that it was necessary to protect the public by imposing a sentence above the Statutory maximum.

ECF No. 34 at 5.

The single ground raised in the second amended petition does not relate back to the grounds raised in the original petition.   That single ground challenges the trial court's actions during sentencing, and none of the grounds in the original petition involve sentencing.   *Compare* ECF No. 34 at 5-19, *with* ECF No. 1 at 4-24.   *See, e.g*., Dean v. United States, 278 F.3d 1218, 1221 (11th Cir. 2002) ("[W]hile Rule 15(c) contemplates that parties may correct technical deficiencies or expand facts alleged in the original pleading, it does not permit an entirely different transaction to be alleged by amendment."); Bradley v. Sec'y, Fla. Dep't of Corr., No. 17-12926-K, 2018 WL 3238836, *18 (11th Cir. April 2, 2018) (citing Dean and explaining, "[T]o relate back, an untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial or sentencing proceeding." (citations omitted)).

As indicated above, Scott did not file a reply, or anything else, in response to the pending motion to dismiss.   To the extent he may argue, in objections to this Report and Recommendation, that he did not understand he had to present all his grounds in the second amended petition, such argument is belied by his filing of his first amended petition, which appears complete and is not labeled otherwise.   *See* ECF No. 18-1.

In addition, to the extent Scott may argue entitlement to equitable tolling, nothing he has presented demonstrates that his untimely filing was the result of circumstances beyond his control and unavoidable with diligence.   *See, e.g*., <u>Holland v. Florida</u>, 560 U.S. 631, 649 (2010) (explaining habeas petitioner "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." (quoting <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005)); <u>Wade v. Battle</u>, 379 F.3d 1254, 1264-65 (11th Cir. 2004) ("Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when "extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition. Equitable tolling is an extraordinary remedy that is typically applied sparingly; however, it is appropriate when a movant

untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence. The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner." (quotations and citations omitted)).   Scott timely filed his original § 2254 petition and after the limitations period ended, he twice requested leave to file an amended petition.   *See* ECF Nos. 1, 6.   Indeed, equitable tolling does not appear applicable here as Scott himself caused the situation that resulted in his amended § 2254 petition(s) being time-barred.   *Cf., e.g.*, Thompson v. Smith, 173 F. App'x 729 (11th Cir. 2006).   *See also, e.g.*, Murphy v. United States, 634 F.3d 1303, 1306 (11th Cir. 2011) (affirming dismissal of § 2255 motion as time-barred and explaining magistrate judge's judges report and recommendation included determination that "[a]lthough Murphy claimed not to have reviewed his file or learned of the grounds for the motion until August 2006, nothing stopped him from reviewing the file earlier; thus, equitable tolling did not apply"); Bradley, 2018 WL 3238836 at *18 ("Mr. Bradley was not entitled to equitable tolling on Grounds . . . that did not relate back to his first amended § 2254 petition because he did not allege any facts showing extraordinary circumstances preventing him from filing his new claims.").

Based on the foregoing, the single ground presented in Scott's second amended § 2254 petition is time-barred. Respondent's motion to dismiss that petition as untimely may be granted.

## First Amended § 2254 Petition

In an abundance of caution, even assuming the single ground in the second amended petition is considered as an additional ground, as it is labeled "Ground 4," along with the three grounds Scott presented in his first amended petition, those three grounds may likewise be addressed only if they relate back to the grounds Scott presented in the original, timely § 2254 petition. As indicated above, in the answer filed September 22, 2021, Respondent asserted that Ground 1 related back to Ground 4 of the original § 2254 petition and part of Ground 3 related back to Ground 5 of the original petition; however, Ground 2 was barred as it did not relate back to anything in the original petition. ECF No. 26 at 17-46.

## Ground 1

In particular, in Ground 1 of the first amended petition, Scott asserted the trial court erred by failing to renew the offer of counsel before the start of the second trial, thus violating Petitioner's 6th Amendment right to be represented by counsel at every critical stage of the process. ECF No. 18-

1 at 9.   In Ground 4 of the original petition, Scott asserted the trial court violated Petitioner's rights under the 5th, 6th, and 14th Amendments by failing to conduct a <u>Faretta</u> hearing at each stage of the proceedings.   ECF No. 1 at 19.   Thus, as Respondent asserts, the first ground of Scott's first amended petition was included within the fourth ground of his original petition and, therefore, relates back because it is based on the same operative facts.

Regarding this first ground in the first amended petition, Scott stated he presented the claim in state court as the first point in his direct appeal. ECF No. 21 at 9.   As Respondent indicated, however, that claim was not presented as a federal claim and relied only on Florida state laws and rules. *See* Ex. E at 8-10; ECF No. 26 at 19-22.   *See* <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004) (holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so"); <u>Preston v. Sec'y, Fla. Dep't of Corr.</u>, 785 F.3d 449, 457-58 (11th Cir. 2015) ("The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim."); *see also* <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>Duncan</u>

v. Henry, 513 U.S. 364, 365-66 (1995); Picard v. Connor, 404 U.S. 270, 278 (1971).   It is procedurally defaulted because Scott cannot obtain another direct appeal.   *See* O'Sullivan, 526 U.S. at 845.   Scott has not alleged or shown cause for the default and actual prejudice, nor has he alleged or shown actual innocence or a fundamental miscarriage of justice.   *See id*. at 848-49; *see, e.g.*, Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003) (explaining cause and prejudice, and correction of fundamental miscarriage of justice); Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of just exception is applicable.").

Indeed, nothing in the First DCA's opinion indicates it considered the claim as a federal claim.   Scott v. State, 230 So. 3d 53 (Fla. 1st DCA 2017). Thus, because this claim was not exhausted as a federal claim and Scott cannot return to the state courts to raise it as such, it is procedurally defaulted and should be denied.

Even if considered on the merits, this ground should be denied.   In the opinion issued in Scott's direct appeal, the First DCA disagreed with his

contention that the trial court erred in not renewing the offer of counsel before

the start of the second bench trial, and the court affirmed the case.   <u>Scott</u>,

230 So. 3d at 54.   The opinion includes relevant background:

> Appellant [Scott] was charged with multiple criminal
> offenses arising out of separate incidents involving his sister ("the
> 2014 case") and his girlfriend ("the 2015 case").   The cases
> were not consolidated, but they were considered together at a
> final pretrial hearing held on April 1, 2016.   At that hearing, the
> cases were set for bench trials the following week, and the trial
> court also considered Appellant's motion to discharge his court-
> appointed attorney and represent himself at the trials.   After
> conducting a full <u>Faretta</u> inquiry during which the court advised
> Appellant of the consequences of self-representation and the
> charges and potential sentences he was facing <u>in both cases</u>,
> the court authorized Appellant to represent himself.   The court
> also appointed Appellant's prior attorney as standby counsel.
>
> The cases proceeded to trial the following week, on April
> 7, 2016.   The trial court called the 2014 case first and conducted
> another full <u>Faretta</u> inquiry, but the court only discussed the
> charges and potential sentences that Appellant was facing in the
> 2014 case and did not mention the 2015 case.   Appellant
> confirmed that he wanted to continue to represent himself with
> standby counsel, and the court permitted him to do so.   After
> closing arguments in the 2014 case, the court took that case
> under advisement and immediately called the 2015 case.   The
> court did not conduct another <u>Faretta</u> inquiry or renew the offer
> of counsel prior to starting the trial in the 2015 case, and
> Appellant represented himself at the trial with standby counsel.
>
> Appellant was found guilty as charged in both cases, and
> he was sentenced to a lengthy prison term.

*Id*. at 54-55 (footnotes omitted).   The opinion then sets forth the pertinent

Florida law:

> The Florida Supreme Court held in <u>Traylor v. State</u> that the trial court is required to renew the offer of court-appointed counsel to an unrepresented defendant at the commencement of each "crucial stage of the proceeding." 596 So. 2d 957, 968 (Fla. 1992). Specifically, the defendant "must be informed of the right to counsel and the consequences of waiver." *Id*.; *see also* Fla. R. Crim. P. 3.111(d)(5) ("If a waiver is accepted at any stage of the proceedings, the offer of assistance of counsel shall be renewed by the court at each subsequent stage of the proceedings at which the defendant appears without counsel.").

> The trial is a crucial stage of the proceeding at which the offer of counsel must be renewed. *See* <u>Lamb v. State</u>, 535 So. 2d 698, 699 (Fla. 1st DCA 1988). However, that does not necessarily mean that the offer of counsel must be renewed on the first day of trial. *See* <u>Wilson v. State</u>, 76 So. 3d 1085, 1088 (Fla. 2d DCA 2011) ("The beginning of the 'trial' in the context of rule 3.111(d)(5) may not be the actual start of the trial, but the start of the trial stage."). Renewal of the offer of counsel at a pretrial hearing is sufficient so long as the offer was made for the trial stage and there is no intervening crucial stage between the renewal of the offer of counsel and the actual start of the trial. *See* <u>Knight v. State</u>, 770 So. 2d 663, 669-70 (Fla. 2000) (citing <u>Lamb</u>); <u>McCarthy v. State</u>, 731 So. 2d 778, 780 (Fla. 4th DCA 1999); <u>Lamb</u>, 535 So. 2d at 699; *cf.* <u>Brown v. State</u>, 113 So. 3d 134, 142 (Fla. 1st DCA 2013) (where trial court renewed offer of counsel prior to the start of jury selection, court was not required to renew offer at the start of each day of the multi-day trial); <u>Harris v. State</u>, 687 So. 2d 29 (Fla. 5th DCA 1997) (trial court was not required to renew offer of counsel at start of retrial that occurred shortly after mistrial in original trial).

<u>Scott</u>, 230 So. 3d at 55. Applying Florida law to Scott's case, the court found

no error by the trial court:

> Here, Appellant's waiver of counsel at the April 1 pretrial hearing was clearly for the trial stage <u>in both cases</u>, and the start of the trial in the 2015 case less than a week later was not a subsequent crucial stage of the proceeding for which the offer of counsel had to be renewed.   Likewise, the fact that the trial in the 2014 case occurred between the pretrial hearing and the trial in the 2015 case is immaterial because the <u>Faretta</u> inquiry held at the pretrial hearing addressed both cases, and there were no subsequent crucial-stage proceedings <u>in the 2015 case</u> between the pretrial hearing and the start of trial in that case. Accordingly, we agree with the State that the trial court did not err when it failed to renew the offer of counsel at the start of the trial in the 2015 case.

*Id*. at 55-56.   The court further found that, even if the trial court erred in not

renewing the offer of counsel before starting the bench trial in the second

case, Scott could not show prejudice given the presence of standby counsel:

> Additionally, although not necessarily dispositive based on <u>Howard v. State</u>, 147 So. 3d 1040 (Fla. 1st DCA 2014), it is still significant that Appellant had standby counsel with him at the trials in both cases because as the Florida Supreme Court stated in <u>Knight</u>, "[s]tandby counsel is a constant reminder to a self-representing defendant of his right to court-appointed counsel at any stage of the proceeding."   770 So. 2d at 670; *see also* <u>Brown</u>, 113 So. 3d at 142; <u>Bloodsaw v. State</u>, 949 So.2d 1119, 1122 (Fla. 3d DCA 2007); <u>McCarthy</u>, 731 So. 2d at 781; <u>Mincey v. State</u>, 684 So. 2d 236, 238 (Fla. 1st DCA 1996); <u>Harrell v. State</u>, 486 So. 2d 7 (Fla. 3d DCA 1986).   Accordingly, under the circumstances of this case, even if the trial court erred by failing to renew the offer of counsel before starting the trial in the 2015 case (despite having done so earlier in the day prior to the start of the trial in the 2014 case), Appellant cannot show prejudice due to the presence of standby counsel in both cases.

*Id*. at 56.   The court distinguished another Florida case and reiterated that

the trial judge here had conducted a full <u>Faretta</u> inquiry at the pretrial hearing

concerning both of Scott's cases:

> Finally, this case is distinguishable from <u>Segal v. State</u>, 920 So. 2d 1279 (Fla. 4th DCA 2006), which also involved <u>Faretta</u> and two separate, but related cases. The Fourth District held in that case that it was error for the trial court not to renew the offer of counsel prior to the start of the hearing in the defendant's violation of probation (VOP) case despite the fact that the court conducted a <u>Faretta</u> inquiry in the criminal case that gave rise to the VOP case.  *Id*. at 1280.   Most pertinent here is that although the court rejected the State's argument that the <u>Faretta</u> inquiry in the related criminal case was sufficient, the court also stated that "[w]e might well have affirmed those convictions if there had either been a full <u>Faretta</u> inquiry specifically warning appellant of the dangers of self-representation, including the penalties in his VOP case. . . ."  *Id*. at 1281.   That is precisely what occurred in this case; the trial court conducted a full <u>Faretta</u> inquiry at the April 1 pretrial hearing at which Appellant was advised of the charges and sentences he was facing in both cases.

*Id*.  The court thus affirmed Scott's convictions and sentences.  *Id*.  The

record supports the court's findings regarding the <u>Faretta</u> hearing and the

presence of stand-by counsel at both bench trials.   Ex. A at 131-56; Ex. C.

Moreover, as Respondent indicated, the Eleventh Circuit has

explained in an unpublished opinion that "[t]here is no clearly established

Supreme Court law on when the Sixth Amendment requires an additional

waiver of counsel, just that there are times when it may be necessary."

<u>McClain v. Sec'y, Dep't of Corr.</u>, 855 F. App'x 610, 613 (11th Cir. 2021); *see*

Patterson v. Illinois, 487 U.S. 285, 298-99 (1988) ("[W]e have taken a more pragmatic approach to the waiver [of counsel] question – asking what purposes a lawyer can serve at the particular stage of the proceedings in question, and what assistance he could provide to an accused at that stage – to determine the scope of the Sixth Amendment right to counsel, and the type of warnings and procedures that should be required before a waiver of that right will be recognized. . . . [W]e have defined the scope of the right to counsel by a pragmatic assessment of the usefulness of counsel to the accused at the particular proceeding, and the dangers to the accused of proceeding without counsel.").

Here, as set forth above, the state trial court conducted a full Faretta hearing on April 1, 2016, and both of Scott's bench trials took place a few days later, on April 7, 2016, all before the same judge.   Ex. A at 131-56; Ex. C.   At the start of the day of the bench trials, after the State indicated the 2014 case would go first, the prosecutor asked the judge to "do a Faretta hearing again" because "it's a critical stage."   Ex. C at 3.   The judge then conducted the hearing, *id*. at 3-19, after he conducted the two bench trials, one immediately after the other, issuing his verdicts at the conclusion of the second trial, *id*. at 19-155.

Based on the foregoing, it was not unreasonable for the First DCA to hold that the trial judge did not err in not renewing the offer of counsel before the second bench trial.   Scott has not shown the state court's decision involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Therefore, if considered, this ground should be denied.

Ground 2

In Ground 2 of the first amended petition, Scott asserted his appellate counsel was ineffective for failing to argue on appeal that the trial court abused its discretion when it found him competent to stand trial without first allowing the experts to testify consistent with their reports or obtain the third report.   ECF No. 18-1 at 11.   Respondent asserts Ground 2 does not relate back, and is therefore untimely, because Scott did not present any claim of ineffective assistance of appellate counsel in his original § 2254 petition. ECF No. 26 at 29; *see* ECF No. 1.

Nevertheless, Ground 2 alleges an ineffective assistance of appellate counsel claim based on the same or similar "common core" facts that support Grounds 1 and 2 of the original petition, which also involved the competency

proceedings in the trial court:

> (1)    **Trial Court Error**:    The Petitioner was denied due process when the trial court failed to conduct a full competency hearing in violation of <u>Pate v. Robinson</u>, 383 U.S. 375, ECF No. 1 at 4;
>
> (2)    **IAC/Trial**:    Counsel was ineffective for failing to protect the due process rights not to be tried or convicted while incompetent afforded to Petitioner through the opinion issued in <u>Pate v. Robinson</u>, ECF No. 1 at 10;

Under this view, Ground 2 relates back to the timely original petition and may be considered.

Even assuming Ground 2 relates back, however, it lacks merit.    As Respondent indicates, Scott presented the claim of ineffective assistance of appellate counsel in the petition for writ of habeas corpus he filed in the First DCA.    Ex. N at 2-8.    The First DCA denied the petition on the merits, without an explanation.    Ex. P.    This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.    *See* <u>Richter</u>, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); <u>Wright v. Sec'y, Dep't of Corr.</u>, 278 F.3d 1245, 1254-55 (11th

Cir. 2002).   A review of the record supports the state court's determination.

*See* Wilson v. Sellers, -- U.S. --, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.   It should then presume that the unexplained decision adopted the same reasoning.").

"An ineffective assistance of appellate counsel claim is governed by the familiar two-part performance-and-prejudice standard set forth in Strickland v. Washington." Clark v. Crosby, 335 F.3d 1303, 1310 (11th Cir. 2003).   "[T]he Sixth Amendment does not require appellate advocates to raise every non-frivolous issue."   Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991).   "Rather, an effective attorney will weed out weaker arguments, even though they may have merit."   Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (citing Heath, 941 F.2d at 1131).   In evaluating a claim of ineffective assistance of appellate counsel, the court must consider the merits of the omitted claim.   *Id*. at 1264-65.   "Counsel's performance will be deemed prejudicial, if . . . 'the neglected claim would have a reasonable probability of success on appeal.'"   *Id*. at 1265 (quoting Heath, 941 F.2d at 1132).   Appellate counsel is not deficient for failing to raise a meritless claim. *See, e.g.*, Freeman v. Att'y Gen., 536 F.3d 1225, 1233 (11th Cir. 2008).

As Respondent explains, under Florida law, an allegation of error concerning a trial court's process or determination of competency must be preserved by contemporaneous objection to present such an issue on direct appeal.   ECF No. 26 at 35; *see, e.g.*, <u>Clowers v. State</u>, 31 So. 3d 962, 965 (Fla. 1st DCA 2010).   In this case, Scott's then-counsel advised the court, at the competency hearing on February 5, 2016:

> This was the issue.   There was a – I believe there was a competency issue raised.   I believe two of the experts came back competent and the third one, I don't know if they actually said incompetent or inconclusive or something.   It was, kind of, a strange finding that they've given and I can't pronounce the doctor's name that had that one.
>
> But, Your Honor, **it's my understanding that the defendant does wish to stipulate that he is competent and he's just – he's wanting a trial**.   We're ready for trial whenever the State is.

Ex. A at 110 (emphasis added).   The prosecutor indicated a belief that the court has to make its own finding, and the judge agreed.   *Id*.   The judge then found "the defendant's competent to stand trial."   *Id*.   The judge also entered a written order finding Scott competent:

> THIS CAUSE having come before the Court for hearing on February 5, 2016, on the issue of the Defendant's competence to proceed.   The Court considered the reports of Kimberly S. Haga, Ph.D., Kevin N. Groom, Ph.D., and Scott Benson, Ph.D., on the issue of the Defendant's competence to proceed.   The Court also considered the criteria and factors as found in Fla. R.

> Cr. P. 3.211, and Section 916.12, Florida Statutes.   The Court
> has also considered argument of counsel.   It is therefore
>
> ORDERED AND ADJUDGED:
>
> 1. The Defendant, Daontae Terrell Scott, is hereby
>    adjudged competent to proceed.

Ex. B at 255.   The three expert reports were filed with the trial court prior to

the competency hearing.   Ex. A at 28-30 (Dr. Groom opined Scott could

name the charges against him, likely had "impaired" capacity to appreciate

the penalties or understand the adversarial nature of the legal process,

among other things), 31-36 (Dr. Haga opines Scott is competent to proceed),

84-87 (Dr. Benson opines Scott is competent to stand trial), 110.   No

objections were raised.   *See* Ex. A at 110, 137; *see also* § 916.12(2), Fla.

Stat. (2014) (setting forth process for mental health experts to determine

competence to proceed and also providing that "[n]otwithstanding any

stipulation by the state and the defendant, the court may require a hearing

with testimony from the expert or experts before ordering the commitment of

a defendant.").   *See also, e.g.*, Clowers, 31 So. 3d at 965 ("Having

acquiesced in or invited the error of which he now complains, appellant

states no grounds for relief on this issue.   Beyond mere non-preservation,

appellant actually waived the point.").

Given the foregoing, appellate counsel did not perform deficiently by not raising a point on appeal challenging the trial court's determination of competency.   Scott has not shown the First DCA's decision, denying his claim of ineffective assistance of appellate counsel, involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   If considered, Ground 2 should be denied.

<u>Ground 3</u>

In Ground 3 of the first amended petition, Scott asserted his trial counsel provided ineffective assistance by not doing any reasonable pre-trial investigation that would have been helpful to his case, such as pre-trial depositions and other relevant factual background investigations.   ECF No. 18-1 at 13.   In Ground 5 of his original petition, Scott had asserted his trial counsel was ineffective for failing to investigate and obtain exculpatory security camera footage "to show that he never had in his possession the 'shears' as alleged or any other object, to support the Aggravated Assault charge."   ECF No. 1 at 22.   Thus, to the extent Ground 3 of the amended petition also includes the argument presented in Ground 5 of the original petition, concerning the security camera footage, that portion of Ground 3

relates back.   None of Scott's other new arguments in the first amended petition concerning trial counsel's pre-trial investigative failures appear to relate back to the original petition, however, and should be considered untimely.

As Respondent indicates, the claim regarding the security camera footage involves only case number 2014-CF-4698 as, in that case, Scott was charged with assault with a deadly weapon, a pair of shears, inside a barbershop.   Ex. A at 1, 4; Ex. C at 20-111.   Scott presented this IAC claim as the first and third grounds in his amended Rule 3.850 motion in state circuit court.   Ex. R at 50-52, 55-57.   That court summarily denied the claims, making the following findings:

> In Defendant's first and third claims, Defendant asserts that his counsel [Charlene Hamilton and Jeremy Early] were ineffective for failing to investigate and procure exculpatory evidence, specifically, security videotapes.   Defendant references security tapes from the Family Barber Shop and Hair Salon, which was the scene of the incident involving Ms. Savage. He asserts that he "never possessed, used or threaten[ed] the alleged victim, Ms. Sabrina Parker Savage, with a pair of shears, or any other weapon.  Nor did the Defendant ever hit, kicked (sic) punched, beaten or threaten any bodily harm to the alleged victim."   He further asserts that the tapes would have demonstrated that he did not commit the alleged offense, "therefore clearly exonerating the defendant.". . .

> Defendant elected to represent himself at trial, and thus is wholly accountable for the quality and substance of his defense.

A defendant "who represents himself has the **entire responsibility** for his own defense, even if he has standby counsel.   Such a defendant cannot thereafter complain that the quality of his defense was a denial of "effective assistance of counsel."   Behr v. Bell, 665 So. 2d 1055, 1056-57 (Fla. 1996) (emphasis added).   As a result, Defendant is not entitled to relief . . . .

Ex. R at 75-76.   On appeal, the First DCA affirmed without a written opinion. This adjudication on the merits is entitled to AEDPA deference under 28 U.S.C. § 2254(d), even though no reasoning is set forth in the decision.   *See* Richter, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); Wright, 278 F.3d at 1254-55.   A review of the record supports the state courts' determination.   *See* Wilson, 138 S. Ct. at 1192.

Respondent explains that the U.S. Supreme Court has not specifically held that a defendant who elects to represent himself at trial can later complain about the effectiveness of counsel's pre-trial representation.   ECF No. 26 at 44.   Thus, at least arguably, it cannot be said that the state court unreasonably applied clearly established federal law.   *See* Wright v. Van Patten, 552 U.S. 120, 126 (2008); *see, e.g.*, Knowles, 556 U.S. at 122 ("[I]t

is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the U.S. Supreme Court]."); Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287-88 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer – that is, a holding by the Supreme Court – about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law.").

Nevertheless, to the extent Scott's claim is based on counsels' performance prior to trial, before the Faretta hearing, such claim should be analyzed under Strickland.   *See* United States v. Roggio, 863 F.2d 41, 43 (11th Cir. 1989) (in pre-AEDPA case, court considered IAC claim involving pretrial preparation, where defendant ultimately represented himself at trial, and found no evidence in record that district judge incorrectly concluded counsel had provided "complete and more than adequate preparation" of case); Fifield v. Sec'y, Dep't of Corr., 849 F. App'x 829, 833 (11th Cir. 2021) (unpublished opinion citing Roggio and explaining "a petitioner who was represented by counsel during pretrial preparations may still assert IATC regarding trial preparation, where counsel's errors prevented the petitioner

from receiving a fair trial"); <u>Paulcin v. Sec'y, Dep't of Corr.</u>, No. 3:15cv076-MCR/GRJ, 2017 WL 4228897, at *8 (N.D. Fla. May 12, 2017) (Report and Recommendation to deny § 2254 petition and explaining, among other things, petitioner had not demonstrated deficient performance or prejudice regarding counsel's pre-trial representation), *adopted by order*, 2017 WL 4226041 (N.D. Fla. Sept. 22, 2017).

Here, whether any alleged security video recording would have shown Scott did not possess shears appears speculative.   Indeed, Scott has not alleged in his amended petition or amended Rule 3.820 motion, and nothing indicates, the barber shop actually had such a security system or made, or kept for any period, such video recordings.   *See* ECF No. 18-1 at 13; Ex. R at 50-52, 55-57.   *Cf.* ECF No. 1 at 23, 24 (original § 2254 petition includes Scott's allegations that he "has been a frequent visitor to the salon for years and knows for a fact that there are security cameras inside the building" and "[s]ecurity footage on average is stored roughly for 90 days depending on equipment").   Notably, the police report of the incident states, "There is no known video surveillance."   Ex. A at 4.

Even assuming such system and video existed, however, Scott has not shown prejudice.   At the start of the bench trial, Scott affirmatively stated

to the judge, "I'm ready to go to trial, Your Honor."   Ex. C at 17.   Scott also pointed out, in his defense, that there was no video to show the aggravated assault with a deadly weapon had occurred.   *Id*. at 22, 25, 107.

The prosecution presented testimony from the victim, Ms. Savage, regarding the incident.   *Id*. at 37-44.   Ms. Savage is Scott's sister, and she testified that when Scott first made physical contact with her during the incident, he had shears in his hands; she described the shears and explained "they were real sharp" and they were used for cutting hair.   *Id*. at 40.   She testified that, when he had the shears in his hands, she "felt like he was going to kill" her, *id*. at 41, and she was afraid he would use the shears against her "[b]ecause he also carry knives and he likes to stab people," *id*. at 42.   She also testified that he elbowed her and she fell backwards to the floor, hitting her chin on "some brick layers that's concreted – concreted on the window ledge in the barbershop."   *Id*. at 37-38.   She ended up with a deep cut on her chin.   *Id*. at 38.   Scott then grabbed her hair and dragged her to the middle of the floor; she tried to get up and run out the back door, but he grabbed her again and slung her towards the door.   *Id*. at 39.   She testified, "During that time – when he slung me again towards that door, he had said he would go to hell today.   And I know my brother when he say stuff like

that, that mean he will kill you or kill himself, 'I will go to hell today.'"   *Id*.
She took it as a threat.   *Id*.   The State thus presented sufficient evidence
from which the trier-of-fact could conclude Scott did possess the shears,
threateningly as a deadly weapon, during the incident and was guilty of
aggravated assault.   *See* §§ 784.011(1), 784.021(1)(a), Fla. Stat. (2014);
*see, e.g.*, P.J.A. v. State, 152 So. 3d 805, 806-07 (Fla. 4th DCA 2014)
(holding that steak knife, which defendant held in his hand and twisted while
threatening to kill victim, was "deadly weapon" under Florida statute, and
"[t]he fact that Appellant did not step toward the victim nor raise the knife in
a threatening fashion does not lead to a contrary conclusion").

   During his own testimony, Scott did not deny that he was at the
barbershop.   *Id*. at 89-98.   Regarding the shears, he asserted that "for the
aggravated assault the police should have took the shears, which it was
three shears that belonged to me because I'm a barber."   *Id*. at 97.   He
further asserted:

> I'm just claiming – I'm just claiming that I'm innocent, Your
> Honor.   After I – I ain't – when I left that barbershop dealing with
> my sister, she wasn't – she wasn't beat up like that.   She wasn't
> scratched up or whatever, you know.   And then it was like, okay,
> if you got beat up by me, you should have went on to the – you
> should have went to the hospital or something for stitches,
> bandages or something.   You ain't got no knots in you head
> where I done punched you in your face coming in no barbershop.

. . . She is trying to say I came in the barbershop and jumped on you.  I wouldn't even jumped on nobody like that.  That's my sister.   That's my half sister.   That's my mama child.

Ex. C at 97.

Based on the foregoing, Scott has not demonstrated deficient performance or prejudice resulting from his counsel's pre-trial investigation of any videotape from the barbershop.   Accordingly, if considered, this ground should be denied.

## **Conclusion**

Based on the foregoing, the Court may grant Respondent's motion to dismiss (ECF No. 35) as the sole ground raised in the second amended § 2254 petition (ECF No. 34) does not relate back to the timely original petition.   If the Court considers, in addition to that "supplemental" petition, the grounds in the first amended § 2254 petition (ECF No. 18-1) that relate back to the timely original petition, because Petitioner Scott is not entitled to federal habeas relief, the petitions (ECF No. 34, 18-1) should be denied on the merits and the motion to dismiss (ECF No. 35) denied as moot.

## **Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   The parties shall make any argument as to whether a certificate should issue by filing objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.   *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court consider the first amended § 2254 petition (ECF No. 18-1), together with the single untimely "Ground 4" in the second amended "supplemental" petition (ECF No. 34), and **DENY** the petitions (ECF Nos. 18-1, 34) as Daontae T. Scott is not entitled to federal habeas relief on the grounds that relate back to his timely original petition.   It is further **RECOMMENDED** that Respondent's motion to dismiss (ECF No. 35) be **DENIED as moot**, a certificate of appealability be **DENIED**, and leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on July 29, 2022.

**S/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a**

**Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.    *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**